Case No. 25-572
Consolidated with Cases No. 25-158 and 25-573

**NOT SCHEDULED FOR ORAL ARGUMENT**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO,
*Petitioner*,

v.

ENVIRONMENTAL PROTECTION AGENCY,
*Respondent*.

---

On Petitions for Review of a Final Agency Action of the United States
Environmental Protection Agency
89 Fed. Reg. 102,773 (December 18, 2024)

---

**REPLY BRIEF OF PETITIONER INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, & AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, AFL-CIO**

WILLIAM J. KARGES, III,
    General Counsel
AVA BARBOUR,
    Associate General Counsel
International Union, UAW
8000 East Jefferson Avenue
Detroit, MI 48214
313/926-5216
wkarges@uaw.net
abarbour@uaw.net

RANDY S. RABINOWITZ
VICTORIA L. BOR
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
202/256-4080
310/785-3204
randy@oshlaw.org
victoriabor87@gmail.com

*Counsel for Petitioner*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ...........................................................................................1

ARGUMENT ..................................................................................................2

    A.   EPA Placed the Effectiveness of its Publication Rule Squarely within the
        Scope of this Rulemaking. .................................................................. 2

    B.   EPA Had a Duty to Respond Substantively to the Unions' Comments .......... 6

    C.   EPA was not Required to Adopt the Unions' Proposed Remedy, but was not
        Privileged to Ignore It................................................................... 8

    D.   This Court Has the Authority to Require EPA to Address the Unions'
        Concerns .................................................................................. 11

CONCLUSION ..............................................................................................13

CERTIFICATE OF COMPLIANCE ....................................................................14

CERTIFICATE OF SERVICE ..........................................................................15

i

## TABLE OF AUTHORITIES

### CASES

*Advocates for Highway & Auto Safety v. Fed. Highway Admin.,* 28 F.3d 1288 (D.C. Cir. 1994) ...................................................................................................9

*Am. Min. Congress v. U.S. EPA*, 965 F. 2d 759 (9th Cir. 1992) ................................7

*Environmental Defense Fund v. Regan*, Case No. 1:20-cv-762, 2024 WL 3887383 (D.D.C. Aug. 20, 2024) .............................................................................2

*Independent Tankers Owner Committee v. Lewis,* 690 F.2d 908 (D.C. Cir. 1982)..12

*Migrant Clinicians Network v. EPA*, 88 F.4th 830 (9th Cir. 2023) ..........................12

*Motor Vehicle Mfrs. Ass'n. v. State Farm Auto. Ins. Co.,* 463 U.S. 29 (1983) .........8

*Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92 (2015) ..........................................10

*Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87 (1995).........................................10

*United Steelworkers of America v. Auchter,* 763 F.2d 728 (3d Cir. 1985)................9

### STATUTES AND REGULATIONS

5 U.S.C. § 553(c) ....................................................................................................11

15 U.S.C. § 2604(b)(3)...........................................................................................1, 2

15 U.S.C. § 2604(d) ............................................................................................ 3, 10

15 U.S.C. § 2604(d)(2)....................................................................................... 1, 2, 7

15 U.S.C. § 2604(e) ..................................................................................................4

15 U.S.C. § 2618(c)(1)(A)(i) ...................................................................................12

15 U.S.C. § 2625(j)(1) ..............................................................................4

29 C.F.R. § 1910.1200(i)(3) .....................................................................8

40 C.F.R. § 720.45(g)(3) ..........................................................................4

40 C.F.R. § 720.45(h)(3) ..........................................................................4

40 C.F.R. § 720.70(b) ...............................................................................1

40 C.F.R. § 720.70(b)(3) ..........................................................................6

EPA, "Premanufacture Notification Requirements
and Review Procedures,"44 Fed. Reg. 2242
(Jan. 10, 1979)......................................................................................2, 3

EPA, "New Chemicals Regulations under the Toxic
Substances Control Act; Proposed Rule,"
88 Fed. Reg. 34100, 34105 (May 26, 2023) ...................................... 1, 3, 5

## OTHER AUTHORITIES

Memorandum from Craig J. Pritzlaff, EPA Acting Assistant Administrator,
    Reinforcing a "Compliance First" Orientation for Compliance Assurance and
    Civil (Dec. 5, 2025) ...........................................................................11

Press Release, EPA, Administrator Zeldin Moves Forward with Ensuring U.S.
    States Are Not Punished for Foreign Air (Apr. 7, 2025) .....................11

Press Release, EPA, EPA Announces Relaunch of Comprehensive Guidance
    Document Website, Advances Total Transparency of Trump Administration
    (Aug. 13, 2025)...................................................................................10

Press Release, EPA, Residential Soil Lead Directive for CERCLA Sites and RCRA
    Hazardous Waste Cleanup Facilities (Oct. 20, 2025)...........................11

Litler Mendelson, Rescinded Order Tracker (Apr. 23, 2025)..................11

iii

**INTRODUCTION**

TSCA mandates that EPA *shall* make publicly available the information a manufacturer submits to the Agency in support of a new chemical application. 15 U.S.C. § 2604(b)(3) and (d)(2). EPA's regulations have long included a provision – 40 C.F.R. § 720.70(b) – aimed at implementing this directive. In the rulemaking at issue in this proceeding, EPA proposed to amend this regulatory provision to "better achieve[]" the statute's "transparency goal . . . through other more efficient and effective mechanisms." 88 Fed. Reg. 34100, 34105 (May 26, 2023); UAW-ER at 45; ACAT-ER at 239.[1]

In our opening brief, the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America ("UAW") demonstrated that the comments it filed with a coalition of unions (the "Unions' Comments"), UAW-ER at 31, were directly relevant to the issues EPA identified as the subject of this rulemaking and that EPA's failure substantively to respond to the Unions' Comments violates the Administrative Procedure Act ("APA"). UAW Opening Brief, Dkt. No. 22.1 ("UAW Br.") at 23-30.

---

[1] Citations to the UAW's excerpts of records are referred to as "UAW-ER," and to the addendum to the UAW's Opening Brief as "UAW Add." Where documents appear in the excerpts of the record submitted by the Alaska Community Action on Toxins (Dkt. No. 24.1), we add references to "ACAT-ER."

1

In response, EPA contends that it had no obligation to respond to the Unions' Comments because they fell outside the scope of the rulemaking, Respondent's Answering Brief, Dkt. No. 41.1 ("EPA Br.") at 38-42; that even if the comments were somehow relevant, EPA had no obligation to adopt the Unions' proposed remedy, *id.* at 42-43; and that even if the Agency erred, the Court lacks authority to remedy it, *id*. at 44-45. As we explain below, each of EPA's arguments is either wrong or mischaracterizes the UAW's position.

## ARGUMENT

### A. EPA Placed the Effectiveness of its Publication Rule Squarely within the Scope of this Rulemaking.

In enacting TSCA, Congress clearly intended "TSCA's PMN [premanufacture notice]- disclosure requirements [to be] . . . mandatory, not optional." *Environmental Defense Fund v. Regan*, Case No. 1:20-cv-762, 2024 WL 3887383, at *11 (D.D.C. Aug. 20, 2024). Congress codified this intent by expressly making disclosure of PMN applications mandatory, 15 U.S.C. § 2604(b)(3), and by specifying how EPA was to accomplish disclosure, *id.* at § 2604(d)(2). As EPA has explained, timely disclosure allows the public both to participate in the Agency's reviews of new chemical applications and to understand what exposures EPA anticipates from the chemical and any limits the Agency imposes on its manufacture. EPA, "Premanufacture Notification Requirements and Review Procedures," 44 Fed.Reg. 2242, 2253 (Jan. 10, 1979); UAW Add. at 67-68.

2

EPA made its disclosure regulation a subject of the instant rulemaking. 88 Fed. Reg. at 34105; UAW-ER at 45; ACAT-ER at 239. In its Notice of Proposed Rulemaking, EPA explained that since first implemented in 1979, the disclosure regulation's objective has been "providing relevant information to the public in terms of the PMNs submitted and under review." *Id.,* citing 44 Fed. Reg. at 2253. In proposing to replace publication of this information in the Federal Register with disclosure by posting the PMNs and their underlying test data on the Agency's "online searchable data base called ChemView," EPA asserted that the latter method of disclosure could better achieve "that transparency goal." *Id.*[2] EPA claimed ChemView would provide "streamlined access" to this information through a more "efficient and effective mechanism[]" that promotes transparency while "negat[ing] the need to publish that information in the Federal Register." *Id.* EPA thus identified the "efficen[cy] and effective[ness]" of its current and proposed disclosure "mechanisms" as issues in this rulemaking.

In its brief, EPA explains that in proposing its new rule, it "specifically delineated the topics on which it was and was not soliciting comments." EPA Br. at 40.  Among the "topics on which" EPA "delineated" that it "*was* soliciting

---

[2] While TSCA specifies disclosure in the Federal Register, 15 U.S.C. § 2604(d), the UAW does not challenge EPA's decision to substitute disclosure in ChemView for the Federal Register notice. The UAW's concern is that *neither* the Federal Register notice, as previously implemented, *nor* posting in ChemView satisfies the EPA's statutory disclosure obligation.

3

comments" were "[t]he disclosure obligations relevant to the new chemicals provisions" including "*notices, . . . consent agreements, and orders of the Administrator.*" *Id.* at 42, citing 15 U.S.C. § 2625(j)(1) (emphasis added).

The Unions directly addressed the issues the Agency identified as within the scope of its rulemaking proceeding by commenting that EPA's proposed disclosure mechanism failed to disclose the statutorily required information. The pre-manufacture *notices* ("PMNs") companies must submit to EPA before manufacturing new chemicals, the *consent agreements* reached under § 2604(e), specifying restrictions on how new chemicals may be used, and the *orders* EPA issues after reviewing the PMNs are precisely what the Unions and their members are seeking. These documents contain information about potential workplace exposures to new chemicals and controls the Agency is mandating employers follow when introducing the chemicals into the workplace. And it was these *notices, consent agreements, and orders* affecting its members that the UAW was unable to obtain through either the Federal Register or ChemView.[3]

---

[3] EPA itself has demonstrated that it understands the importance that its review take account of worker exposures, by including in its proposal and in the Final Rule requirements that submitters provide detailed worker exposure data from sites they both do and do not control (40 C.F.R. § 720.45(g)(3) and (h)(3); UAW Add. at 58-60; ACAT-ER at 25-26) – and thus, that workers are a key part of the public interested both in participating in the review process and having information about actual and potential exposures in their workplaces.

As the Unions explained in their Comments and as summarized in the UAW's brief, even if the Unions or their members have reason to know their employer is seeking to introduce a new chemical into their workplace, there are a number of reasons why neither the Federal Register notices nor ChemView provides "transparent" information to workers. (UAW Br. at 8-9) The employer is not necessarily the submitter and – whether the notice is published in the Federal Register or on ChemView – the submitter often claims its name as confidential business information ("CBI"). In addition, accessing information on ChemView – an on-line database, 88 Fed. Reg. at 34105; UAW-ER at 45; ACAT-ER at 239 – requires knowledge of a relevant search term: either the name of the PMN submitter, the PMN number assigned to the application by EPA, or the chemical name of the substance to be manufactured. This is information either hidden behind CBI or to which Unions and their members do not otherwise have access. Finally, workers concerned about new chemicals at their workplace cannot search ChemView by location and EPA's Federal Register notices do not list the location where the chemical will be manufactured. (UAW Br. at 9-10 n.7, 19-20)

To illustrate the basis for their concerns about a lack of effective disclosure, the Union Comments related a specific instance in which a member of the UAW's professional staff learned that a facility employing the Union's members was using new chemicals. When he attempted to find information about the chemical, EPA's

review of its hazards, and any restrictions EPA had imposed on its use, the exercise proved futile.[4]

In short, EPA explicitly made the question whether publishing PMN-related information in ChemView is an "effective and efficient" "mechanism" for satisfying its statutorily-mandated disclosure obligations. The Unions' Comments detailing why neither the then-current nor proposed disclosure "mechanisms" provided effective disclosure fell squarely within the scope of the rulemaking, as defined by the Agency.

## B. EPA Had a Duty to Respond Substantively to the Unions' Comments

EPA did not substantively respond to the Unions' Comments.  Instead, while acknowledging that the Unions raised an issue warranting "conversation," EPA nonetheless dismissed their comments as outside the scope of the rulemaking, writing that "other than discrete proposals to change 40 C.F.R. . . . § 720.70(b)(3), . . . EPA did not propose or solicit public comment on access to information in the

---

[4] The UAW has filed a Motion to Supplement the Record with the Declaration of Darius Sivin, PhD.  UAW Add. 79-82. Dr. Sivin's declaration describes his futile efforts to obtain new chemical information.  This is the same incident described in the Unions' Comments, although the declaration includes more detail about the incident. Despite claiming this information has no bearing on the outcome of this litigation, EPA spends ten pages urging the Court to deny the motion to supplement.  Dkt. No. 44. EPA was clearly aware of the incident described in Dr. Sivin's declaration – whether supplemented with more detail or not – and the futile search it describes is properly before the Court.

6

New Chemicals Program for the general public or for workers and their unions."

ACAT-ER at 137.[5]  In its brief, EPA continues to contend that it had no obligation

to respond to the Unions' Comments because, in the Agency's view, they were

unrelated to the "topics" on which the Agency "specifically" solicited comments.

EPA Br. at 40.[6]

As we have shown, EPA is wrong to claim that the concerns the UAW and

other unions raised were outside the scope of the rulemaking. Rather, because the

Unions' Comments fell squarely within the scope of this rulemaking and "raise[d]

relevant points . . . which, if adopted, would require a change in the agency's

proposed rule," EPA had an obligation to address them. *Am. Min. Congress v. U.S.*

*EPA*, 965 F. 2d 759, 771 (9th Cir. 1992) (internal citations omitted). Having

initiated a rulemaking to increase the transparency of the new chemicals program

and having specifically proposed a "mechanism" that it contended would

---

[5] The UAW concedes that it erred in suggesting, in its opening brief, that EPA had failed to "mention" the Unions' Comments in promulgating the Final Rule. UAW Br. at 16. As explained in the text, however, we stand behind the fact that while acknowledging our comments, EPA completely failed to address them substantively.

[6] EPA goes on to contend that the Unions failed to challenge "the Rule's discrete change describing EPA's publication of Federal Register notices pursuant to § 2604(d)(2)." EPA Br. at 40. That the Unions did not specifically cite the regulatory text EPA proposed changing does not permit the Agency to ignore the substance of the Unions' Comments, which clearly and expressly addressed the disclosure issues EPA's proposal raised.

7

accomplish that purpose, EPA was not free to ignore factual evidence that its proposal would do just the opposite. By refusing to deal with the Unions' Comments, the Agency failed to "examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n. v. State Farm Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). Its failure to do so was thus arbitrary and capricious, and violated the APA.

## C. EPA was not Required to Adopt the Unions' Proposed Remedy, but was not Privileged to Ignore It.

Having demonstrated that neither the existing regulations nor the proposed amendments would satisfy the Agency's disclosure obligations to workers, the Unions then proposed a method of remedying the problem. The Unions' Comments suggested that even if the tension between TSCA's twin goals of promoting transparency and safeguarding CBI prevented EPA from fully disclosing information about new chemicals to the public, the employer-employee relationship offered another means of disclosure that could provide effective disclosure to workers, even if it did not do so for the public at large. To support their proposal, the Unions pointed to a provision in the Occupational Safety & Health Administration's (OSHA's) Hazard Communication Standard, 29 C.F.R. 1910.1200(i)(3), which resolved the same tension by requiring third-party disclosure of confidential chemical information to workers and their union representatives under limited circumstances. The Unions also noted that private

parties often use confidentiality agreements under the National Labor Relations Act to provide workers with relevant information about potential hazards in their workplaces, while at the same time protecting their employers' CBI. As the Third Circuit recognized in *United Steelworkers of America v. Auchter,* 763 F.2d 728, 743 (3d Cir. 1985), such confidentiality agreements "are a well-accepted traditional means of allowing access to trade secret information while effectively protecting the owners of that information from irreparable harm."

Contrary to EPA's contention in its brief, the UAW is not "attempt[ing] to import requirements from *other* statutory and regulatory regimes for *other* circumstances to force EPA to create new third-party disclosure requirements." EPA Br. at 43 (emphasis in original). Instead, the Unions offered these examples to demonstrate how other agencies had successfully resolved the very same tension TSCA presents: disclosing critical information about workplace hazards to employees while safeguarding their employer's legitimate business interests. EPA's closed-minded refusal even to consider these alternative means of providing effective and efficient disclosure of PMN information during its rulemaking proceeding is inconsistent with its obligations under the APA. *Advocates for Highway & Auto Safety v. Fed. Highway Admin.,* 28 F.3d 1288, 1292 (D.C. Cir. 1994) ("the agency's open-mindedness" is the "touchstone" of the court's inquiry under the APA).

9

While asserting that TSCA does not *require* the Agency to adopt the Unions' specific proposal, EPA nonetheless acknowledged that it has the *authority* to respond to the problems the Unions identified. Thus, the Agency points to a template on its website that requires employers to provide "workers and their representatives . . . ready access to information" in the consent orders the Agency issues under § 2604(d). *See* EPA Br. at 41 n.5. UAW is pleased that – for now – EPA has acknowledged and taken steps to address the concerns the Unions raised. However, EPA's "non-rulemaking action" hardly cures the Agency's failure to address and rectify these problems in promulgating the Final Rule. Like all guidance documents, this "boilerplate language" (*id.*) has neither the force of law nor the permanency of rules adopted through notice-and-comment rulemaking. *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97 (2015) (guidance documents "'do not have the force and effect of law.'") (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)). *See also*, Press Release, EPA, *EPA Announces Relaunch of Comprehensive Guidance Document Website, Advances Total Transparency of Trump Administration* (Aug. 13, 2025), available at https://www.epa.gov/newsreleases/epa-announces-relaunch-comprehensive-guidance-document-website-advances-total (explaining that "EPA's guidance documents generally lack the force and effect of law."). And as the current

10

Administration has shown time and again, unilaterally adopted policies can be unilaterally changed overnight.[7]

### D. This Court Has the Authority to Require EPA to Address the Unions' Concerns

The APA requires EPA to issue a statement of the reasons for its Final Rule. 5 U.S.C. § 553(c). While that statement may be "concise" and "general," courts have warned that an Agency must "respond in a reasoned manner to the comments received, to explain how the agency resolved any significant problems raised by

---

[7] For a few examples of unilaterally-adopted policies rescinded in just the last year, *see*, *e.g.*, Press Release, EPA, Administrator Zeldin Moves Forward with Ensuring U.S. States Are Not Punished for Foreign Air (Apr. 7, 2025), available at https://www.epa.gov/newsreleases/administrator-zeldin-moves-forward-ensuring-us-states-are-not-punished-foreign-air (rescinding established guidance on consideration of international emissions under the Clean Air Act); Press Release, EPA, Residential Soil Lead Directive for CERCLA Sites and RCRA Hazardous Waste Cleanup Facilities (Oct. 16, 2025), available at https://semspub.epa.gov/work/HQ/100003761.pdf (rescinding and replacing guidance on clean-up of lead-contaminated soil); Memorandum from Craig J. Pritzlaff, EPA Acting Assistant Administrator, Reinforcing a "Compliance First" Orientation for Compliance Assurance and Civil (Dec. 5, 2025), available at https://www.epa.gov/system/files/documents/2025-12/reinforcing-a-compliance-first-orientation-for-compliance-assurance-and-civil-enforcement-activities.pdf (Memorandum revising, establishing new enforcement policy); *see generally* Litler Mendelson, Rescinded Order Tracker (Apr. 23, 2025), available at https://www.littler.com/news-analysis/asap/rescinded-order-tracker (tracking Executive Orders rescinded in the first 100 days of the Trump Administration).

the comments, and to show how that resolution led the agency to the ultimate rule." *Independent Tankers Owner Committee v. Lewis,* 690 F.2d 908, 919 (D.C. Cir. 1982) (citation and quotation marks omitted). EPA's summary dismissal of the Unions' proposed solution does not meet the APA's requirements.

Pursuant to 15 U.S.C. § 2618(c)(1)(A)(i), this Court has jurisdiction "to grant appropriate relief," directing EPA to respond to the UAW's concerns consistent with the factual record before the Agency in a manner that is neither arbitrary, capricious, nor contrary to law. We are not seeking a writ of mandamus to direct EPA to adopt the Unions' proposed rule. Nor are we seeking vacatur pending the Agency's reconsideration of the Rule, particularly since, as demonstrated, the prior rule is no more effective than EPA's amended rule. *Migrant Clinicians Network v. EPA*, 88 F.4th 830, 848 (9th Cir. 2023) (setting forth factors to consider in remanding without vacatur). We are instead seeking a decision from the Court that finds EPA failed to address an important statutory and regulatory concern – that its preferred method of information disclosure is not effective at achieving the statutory disclosure mandate – and a remand to the Agency directing it either to adopt an effective method of disclosing new chemical information to workers or to explain why it cannot do so.

12

**CONCLUSION**

EPA has a statutory obligation to provide meaningful disclosure of new chemical information, and the factual record before the Agency makes clear that its current regulatory scheme fails to do so. The UAW respectfully submits that EPA should be required to remedy that failure in a nonarbitrary manner.

Respectfully submitted,

/s/ Randy Rabinowitz
Randy S. Rabinowitz
Victoria L. Bor
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
T: 202-256-4080
T: 301-785-3204
randy@oshlaw.org
victoriabor87@gmail.com

William J. Karges, III
Ava Barbour
International Union, UAW
8000 East Jefferson Avenue
Detroit, MI 48214
T: 313-926-5216
wkarges@uaw.net
abarbour@uaw.net

13

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-572

I am the attorney or self-represented party.

**This brief contains** | 2,876 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Randy Rabinowitz | **Date** | 4/22/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*

14

**CERTIFICATE OF SERVICE**

I certify that today I filed the foregoing response brief by filing this document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit, through the Electronic Case Filing (ECF) system.

DATED: April 22, 2026

/s/ *Victoria L. Bor*

Victoria L. Bor